UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-60034-CR-ALTMAN/Hunt

UNITED STATES OF AMERICA,

    *Plaintiff,*

*v.*

ELVIN I. LEWIS, JR.,

    *Defendant.*

_____/

## OMNIBUS ORDER

A federal jury convicted Elvin Lewis of money laundering, and he isn't happy about it. Now, in the face of overwhelming evidence, he insists that he's innocent and that, if we'd only give him a do-over, he'd prove it. So, to extricate himself from the jury's verdict, he's filed a farrago of post-conviction motions—all now ripe for resolution. After a careful review of the briefing, the record, and the applicable law, we **DENY** Lewis's Motion to Compel Grand Jury Materials [ECF No. 223] (the "Grand Jury Materials Motion"), **DENY** Lewis's Emergency Motion for a Mistrial [ECF No. 224] (the "Mistrial Motion"), **GRANT in part** Lewis's Motion for Trial Transcript (the "Trial Transcript Motion") [ECF No. 226], **DENY as moot** Lewis's Motion for a Hearing on the Motion for a Mistrial (the "Hearing Motion") [ECF No. 228], **DENY** Lewis's Motion for Disqualification of the Judge [ECF No. 229] (the "Disqualification Motion"), **DENY** Lewis's Motion to Produce Trial Audio [ECF No. 230] (the "Trial Audio Motion"), and **DENY** Lewis's Expedited Motion for Sanctions, to Strike Plaintiff's Answers, and for Default Judgment [ECF No. 242] (the "Sanctions Motion").

## THE FACTS

In early 2019, a federal grand jury charged Lewis with ten counts of money laundering and one count of conspiracy to commit money laundering. *See* Indictment [ECF No. 1]. After he was

arrested, Lewis was released on bond, *see* Feb. 12, 2019 Paperless Minute Entry [ECF No. 5], and was assigned Assistant Federal Public Defender Eric Martin Cohen, *see* Feb. 15, 2019 Notice of Reassignment [ECF No. 8]. The case was set for trial in mid-March of 2019 before U.S. District Judge Darrin P. Gayles. *See* Order Setting Trial Date [ECF No. 9]. After Judge Gayles granted Lewis's motion to continue, *see* Mar. 4, 2019 Paperless Order [ECF No. 16], the case was transferred to us, *see* Case Reassignment Order [ECF No. 18].

We continued the trial to August 18, 2019. *See* Apr. 26, 2019 Paperless Minute Entry [ECF No. 22]. But, just two weeks before trial was supposed to begin, AFPD Cohen informed us that Lewis was looking to hire a new lawyer. *See* Government's Unopposed Motion to Continue [ECF No. 24] at 1 ("[C]ounsel for the defendant . . . informed the United States and the Court that [ ]the Defendant may seek to hire new counsel for trial[.]"). As a result, the Government moved to continue the trial again. *See id.* We granted the motion to continue at the calendar call and reset the trial for September 3, 2019. *See* Aug. 19, 2019 Order Continuing Trial [ECF No. 29].

In late August of 2019, we continued the trial a *fourth* time, to October 2, 2019—this time, at Lewis's request—finding that "failure to grant the continuance [1] would result in a miscarriage of justice in that counsel for Defendant would not have time to prepare their defense" and "[2] would deny counsel for the defendant the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." Aug. 28, 2019 Order to Continue [ECF No. 31] at 1 (quoting 18 U.S.C. § 3161(h)(7)(B)). We also scheduled another hearing for September 3, 2019—to allow Lewis more time to retain private counsel—and told him that we'd cancel the hearing if his new lawyer made an appearance before September 3rd. *See* Aug. 27, 2019 Paperless Minute Entry [ECF No. 30]. On September 2, 2019, Lewis's first private defense lawyer, Ms. Tonia Troutwine, entered an appearance, *see* Troutwine's Notice of Attorney Appearance [ECF No. 35]—and, accordingly, the Federal Public

Defender's Office moved to withdraw, *see* AFPD Cohen's Motion to Withdraw as Attorney [ECF No. 36].

Once Ms. Troutwine appeared as Lewis's lawyer, the Government started the process of producing discovery to her. Even before the Federal Public Defender's Office withdrew, in fact, the Government had emailed Ms. Troutwine and explained that "discovery in this matter is voluminous[.]" First Sept. 5, 2019 Email from AUSA Lisa H. Miller to Tonia Troutwine [ECF No. 239-1] (the "First Email from Miller to Troutwine") at 4. This first email explained that the "[d]iscovery includes, but is not limited to, bank records, business records, phone records (pen register/trap and trace as well as contents of phones), computer records, victim statements, the defendant's consensually provided statements, and other evidence." *Id.* In that initial email, AUSA Miller tried to attach several documents that Ms. Troutwine could begin reviewing while the Government compiled the rest of the discovery.[1] *Id.* at 4–6. The Government asked that Ms. Troutwine give the U.S. Attorney's Office a hard drive so that all of the data could be transferred to her as quickly as possible. *Id.*

The next day, Ms. Troutwine responded that she had sent a hard drive to the U.S. Attorney's Office and that it would be delivered on September 9, 2019. *See* Sept. 6, 2019 Email from Tonia Troutwine to AUSA Lisa H. Miller [ECF No. 239-1] at 2. On September 12, 2019, AUSA Miller responded that the data had been successfully transferred onto the hard drive and that it had been

---

[1] We say *tried* because, given the size of its attachments, Ms. Miller's initial email couldn't be delivered. *See* Second Sept. 5, 2019 Email from AUSA Lisa H. Miller to Tonia Troutwine [ECF No. 239-1] (the "Second Email from Miller to Troutwine") at 3. After AUSA Miller realized that the initial email didn't go through, she sent Ms. Troutwine a second email explaining the issue, copying and pasting the body of the original message (but not the attachments), and asking Ms. Troutwine to send a hard drive onto which Miller could copy the discovery. *Id.* AUSA Miller also included AFPD Cohen on the email and asked him "to share with Ms. Troutwine what we already provided you[.]" *Id.* There's no indication that AFPD Cohen failed to do this, and (notably) Lewis never—in all his motions—suggests that he did.

shipped back to Ms. Troutwine's office. *See* Sept. 12, 2019 Email from AUSA Lisa H. Miller to Tonia Troutwine [ECF No. 239-1] at 1. Although Ms. Troutwine never confirmed that she received the hard drive, the Government believes (and the record confirms[2]) that it *was* delivered to her office on September 13, 2019. *See* Government's Response in Opposition to Defendant's Various Motions [ECF No. 232] (the "Omnibus Response") at 2 n.1.

On September 23, 2019, Ms. Troutwine moved to continue the trial. *See* Defendant's Sept. 23, 2019 Motion to Continue Trial [ECF No. 43] (the "Motion to Continue"). In the Motion to Continue, Ms. Troutwine argued that a continuance would be appropriate because she had "received discovery in th[e] case [ten days prior]" and because the trial schedule "le[ft] less than 14 days for counsel to review and request discovery if necessary." *Id.* at 1. During the calendar call two days later, we asked Ms. Troutwine to explain the basis for her motion. *See* Calendar Call Transcript Excerpts [ECF No. 255] (the "Calendar Call Transcripts"). She responded that she had recently received additional discovery from the Government. *Id.* at 3:11–12. During our ensuing colloquy, however, we learned that the additional discovery was nothing more than (1) the certified transcript of a *previously disclosed* recording, and (2) a victim's bank records, which were *just* 22 pages long. *Id.* at 3:13–5:2 (discussing the additional materials), 13:13–19 (correcting a prior misstatement that the records were less than 10 pages long). After noting that the additional discovery was minimal—and mostly cumulative of discovery that had already been provided—we concluded that the materials didn't justify *yet another* continuance. *Id.* at 4:14–25. In response, Ms. Troutwine contended that her client was entitled to depose all of the Government's witnesses. *Id.* at 6:3–6. We explained, though, that—unlike in state court—"[t]here are no depositions" in federal court and that Lewis was only entitled to receive a copy

---

[2] In her motion to continue, Ms. Troutwine noted that she "received discovery in this case on Friday, September 13th," Defendant's Sept. 23, 2019 Motion to Continue Trial [ECF No. 43] (the "Motion to Continue") at 1—corroborating the Government's belief.

of the witness list on the day of the calendar call—which, as it turns out, he already had. *Id.* at 6:7–12. When Ms. Troutwine insisted on discovery depositions, we reiterated that, in federal court, the defense was not entitled to depose the Government's witnesses. *Id.* at 7:11–15. We also confirmed that the Government had produced all of its *Brady*[3] and *Giglio*[4] materials. *Id.* at 7:16–8:7. We even noted that, under our Court's practices, Ms. Troutwine would receive the Government's Jencks Act[5] material earlier than the Jencks Act, 18 U.S.C. § 3500, required. *Id.* at 8:8–18, 8:25–9:5. In light of this discussion, we determined that a continuance was unwarranted and denied Lewis's motion. *Id.* at 4:14–24.

The case proceeded to trial on October 2, 2019—more than six months after the trial had been originally scheduled to take place and approximately two months after the Court learned that Lewis was engaging private counsel. The trial lasted five days. In her closing, Ms. Troutwine argued (on several occasions) that Lewis was *not guilty* of the crimes with which he was charged:

> Suspicion does not equal guilt. Could my client have suspected improper conduct from the guy he had confidence in? Of course there was suspicious conduct. He confronted him about it. He asked him about it. But he trusted him and mistakenly had confidence in him. His mistake was his confidence. . . . My client foolishly, mistakenly had confidence in the wrong person. And that is the only thing he did wrong here. *He is an innocent man. He is not guilty.* . . . The man you see

---

[3] Under *Brady v. Maryland*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963).

[4] Under *Giglio v. United States*, prosecutors must disclose any material impeachment evidence in their possession or control because, "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within [the *Brady*] rule." 405 U.S. 150, 154 (1972) (cleaned up).

[5] Under the Jencks Act, once "a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use." 18 U.S.C. § 3500(b).

> here today, Mr. Lewis, is *not guilty*. He's *not guilty of any crime*. His only
> foolish mistake was to have confidence in the wrong person.

Trial Transcripts Volume Five [ECF No. 147] at 1155:6–22 (emphasis added). Despite this impassioned closing, the jury found Lewis guilty of each of the Indictment's eleven counts, *see* Jury Verdict as to Elvin Lewis, Jr. [ECF No. 83]; Special Jury Verdict for Forfeiture [ECF No. 84], and we remanded him into the custody of the U.S. Marshal.

After the trial, Ms. Troutwine moved to withdraw as counsel, citing "irreconcilable differences." Troutwine's Motion to Withdraw as Counsel [ECF No. 99] at 1. We granted the motion, *see* Oct. 23, 2019 Paperless Order [ECF No. 100], and reappointed the Federal Public Defender's Office—specifically, AFPD Elizabeth Blair—to represent Lewis, *see* Nov. 25, 2019 Paperless Minute Entry [ECF No. 104]. A few weeks later, on December 9, 2019, attorneys Joshua Fisher and Peter Butlien filed a notice of appearance on Lewis's behalf. *See* Fisher & Butlien Notice of Appearance [ECF No. 108].

Things quickly devolved. During the period in which he was represented by Messrs. Fisher and Butlien, Lewis filed seven *pro se* motions—each of which we struck because "[t]he Defendant [was] represented by counsel and may file documents with the Court only through his counsel." Dec. 13, 2019 Paperless Order [ECF No. 115] (striking the Defendant's *pro se* Motion for Emergency Post-Conviction Relief, Notice to the Chief Judge, Motion for Discovery, Emergency Motion for Change of Venue, and Sealed Ex-Parte Motion for Trial Transcripts); *see also* First Dec. 27, 2019 Paperless Order [ECF No. 122] (striking the Defendant's *pro se* Motion to Compel Grand Jury Material); Second Dec. 27, 2019 Paperless Order [ECF No. 124] (striking the Defendant's *pro se* Motion to Compel Disclosure of Exculpatory Evidence).

Then, on December 30, 2019—just three weeks after filing their Notice of Appearance— Messrs. Fisher and Butlien moved to withdraw from the case, citing (again) "irreconcilable

differences" with Lewis and adding that "Mr. Lewis has expressed his desire to hire new counsel." Fisher & Butlien Motion to Withdraw [ECF No. 124] at 1. On January 8, 2020, we granted the motion and appointed Erick Cruz from the Criminal Justice Act panel to represent Lewis. *See* Jan. 8, 2020 Paperless Minute Entry [ECF No. 128]; Jan. 8, 2020 Paperless Order [ECF No. 129]. If you're still counting, Mr. Cruz was Lewis's *fifth* lawyer.

On April 3, 2021, Lewis moved to be appointed co-counsel with Mr. Cruz. *See* Motion to be Appointed Co-Counsel [ECF No. 149]. We denied the motion because Lewis "is not a lawyer [and was] represented by able Court-appointed counsel." Apr. 13, 2020 Paperless Order [ECF No. 153]. We also explained:

> The Court does not understand Mr. Lewis to be asking for permission to represent himself—to proceed, that is, *pro se*. If the Defendant does want to represent himself, it would be his right to do so. In that circumstance, the Court would hold a hearing, consistent with the holding of *Faretta v. California*, 422 U.S. 806 (1975), to determine whether the Defendant in fact wishes to represent himself and whether he is competent to do so. But, because the Defendant has expressly requested only to appear as co-counsel with his Court-appointed lawyer, the Court leaves these *Faretta* inquiries for another day. . . . [I]f the Defendant does wish to discharge his Court-appointed counsel and proceed *pro se*—he is now on his third lawyer, and he will not be getting a fourth—he must file a motion asking for that relief. Otherwise, the Court will assume that he is prepared to proceed through counsel.

*Id.* (italics added).[6] After we denied his motion, Lewis—once again—filed a series of *pro se* motions that we subsequently struck because "Mr. Lewis [was] represented by counsel and thus [couldn't] file motions on the docket." First Apr. 14, 2020 Paperless Order [ECF No. 156] (striking the Defendant's *pro se* Motion for Release Pending Appeal); *see also* Second Apr. 14, 2020 Paperless Order [ECF No. 159] (striking the Defendant's *pro se* Motion to Arrest Judgment); Apr. 28, 2020 Paperless Order [ECF No. 166] (striking the Defendant's two *pro se* Emergency Motions for Release Pending Appeal).

---

[6] Here, of course, our count was off: Lewis was on his fifth, not his third, lawyer (Cohen, Troutwine, Blair, Fisher, and Cruz).

In early December 2020, Lewis relieved Mr. Cruz and hired Mr. Khambrel Davis instead. *See* Davis Notice of Appearance [ECF No. 205]; Dec. 8, 2020 Paperless Minute Entry [ECF No. 206]. Davis, of course, was lawyer number *six*. A few months later, in April and May of 2021, Lewis twice moved to dismiss Mr. Davis and to represent himself. *See* First Motion to Dismiss Davis as Counsel and Self-Represent [ECF No. 213]; Second Motion to Dismiss Davis as Counsel and Self-Represent [ECF No. 218]. After a lengthy *Faretta* colloquy, we granted the motions and appointed Mr. Leonard Fenn to serve as Lewis's standby counsel. *See* May 18, 2021 Paperless Minute Entry [ECF No. 219].

Since going *pro se*, Lewis has unleashed a deluge of—often duplicative—motions, *see* Grand Jury Materials Motion, Mistrial Motion, Hearing Motion, Disqualification Motion, Trial Audio Motion, and Sanctions Motion [7]—which we now address in turn.[8]

## ANALYSIS

### I.      The Grand Jury Materials Motion

Lewis first wants the Government to disclose a transcript of its proceedings before the Grand Jury. *See* Grand Jury Materials Motion at 1–2. In making this request, Lewis speculates that the prosecution *must have* misled the Grand Jury—though he never explains (1) why he thinks so, (2) how he believes the Grand Jury was deceived, or (3) why, given his conviction, he needs the grand-jury

---

[7] Lewis has also filed other *pro se* motions. *See* Request for Docket Sheet [ECF No. 224]; Emergency Motion to Continue Sentencing [ECF No. 233]; Emergency Motion to Produce Discovery and Trial Transcripts [ECF No. 236]; Emergency Motion for Trial Transcripts, Discovery, and Additional Documents and to Continue Sentencing [ECF No. 246]. We won't dwell on these here, though, because we've already resolved them in earlier orders. *See* May 19, 2021 Paperless Order [ECF No. 221] (granting the Motion to Continue Sentencing); July 23, 2021 Paperless Order [ECF No. 237] (denying the Defendant's Emergency Motion to Continue Sentencing); Oct. 7, 2021 Paperless Order [ECF No. 248] (denying as moot the Defendant's Emergency Motion for Discovery and Trial Transcripts and to Continue Sentencing, and granting in part and denying in part the Defendant's Motion for Forwarding of Trial Transcripts, Discovery, and Additional Documents and to Continue Sentencing).
[8] Lewis, by the way, has now asked us to appoint Mr. Fenn as his lawyer for sentencing and appeal. *See* Motion to Appoint Counsel [ECF No. 250]. We granted that motion on December 10, 2021. *See* Dec. 10, 2021 Paperless Order [ECF No. 251]. Mr. Fenn, then, is Lewis's *seventh* lawyer in the case.

materials at all. *See generally id.* Because Lewis has failed to meet the "well-established and demanding legal standards regarding what [defendants] must show to be entitled to grand jury materials[,]" *United v. Aisenberg*, 358 F.3d 1327, 1350 (11th Cir. 2004), we deny his request.

There's a "long-established policy that grand jury proceedings in federal courts should be kept secret." *Pitch v. United States*, 953 F.3d 1226, 1232 (11th Cir. 2020) (en banc) (citing *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983), and *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958)). Grand-jury secrecy serves "several vital purposes." *Id.* (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 219 n.10 (1979)). "Accordingly, both Congress and the Supreme Court have consistently stood ready to defend the secrecy of the grand jury against any unwarranted intrusions." *Id.*

The "court *may* authorize disclosure . . . of grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]" FED. R. CRIM. P. 6(e)(3)(E) (emphasis added). But, when a defendant seeks grand-jury materials, he "must show [a] particularized need to justify infringement of the secrecy surrounding a grand jury." *United States v. Cole*, 755 F.2d 748, 758 (11th Cir. 1985) (cleaned up). A party's "unsubstantiated allegations of grand jury manipulation do not satisfy the particularized need standard." *Id.* at 759. "Even when persons requesting disclosure have carried the burden of showing that they have a compelling and particular need for the grand jury material in order to avoid an injustice and that their need for disclosure outweighs the secrecy need, access is limited and covers only those materials actually needed." *Aisenberg*, 358 F.3d at 1349. To demonstrate a particularized need, a defendant must show that "circumstances . . . created certain difficulties peculiar to this case, which could be alleviated by access to *specific* grand jury materials, without doing disproportionate harm to the salutary purpose of secrecy embodied in the grand jury process." *Id.* at 1348–49.

Lewis doesn't come close to meeting this rigorous standard. In a rambling series of untethered ruminations, Lewis avers that "the prosecution not only suppressed exculpatory evidence, [but] the

prosecution *may have* presented evidence that was perjured, then made inflammatory, unfair and legally inaccurate arguments to the Grand Jury suggesting that they were compelled to return an indictment based on an obviously unfair and biased presentation." Grand Jury Materials Motion at 2 (emphasis added). Lewis's use of the speculative "may have" tells us all we need to know about his accusations—that they're entirely unsupported by the evidence. To his credit, Lewis never suggests that he actually has any evidence to corroborate these assertions. Instead, he says only that he needs the grand-jury materials so that he can "establish[ ] *whether* the prosecutor made improper or misleading arguments to the Grand Jury, including untrue and inflammatory statements so as to deprive [him] of the constitutional right to an impartial and unbiased Grand Jury." *Id.* (emphasis added). Again, Lewis doesn't explain why he thinks the Government misled the Grand Jury, how (or as to which pieces of evidence) he believes the Grand Jury was deceived, or even what relevance this grand-jury material would have at this late stage of the case—when a petit jury has reviewed the Government's evidence and determined that it proved Lewis's guilt *beyond a reasonable doubt*. As to this last point, Lewis doesn't even try to grapple with the overwhelming weight of Supreme Court and Eleventh Circuit authority, which stands for the commonsense proposition that a subsequent guilty verdict renders harmless any error that might've occurred before the grand jury. *See United States v. Mechanik*, 475 U.S. 66, 70, 73 (1986) ("[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. . . . [T]he petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation. In such a case, the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings."); *see also United States v. Davis*, 721 F. App'x 856, 861 (11th Cir. 2018) ("[M]ost of the Contested Statements were either repeated or approximated at trial and were believed by the jury. Under these circumstances, we do not find that the Contested

10

Statements demonstrate a compelling need for disclosure that is required by the ends of justice." (cleaned up)); *United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004) (defendant's accusation that "the government [] us[ed] perjured testimony before the grand jury to obtain his indictment" was without merit because "the petit jury's guilty verdicts render harmless any possible error in the grand jury proceedings"). Nor does he even try to show how the strong public interest in maintaining grand-jury secrecy would be preserved by the disclosure of the grand-jury materials in this case. He's thus waived any such argument. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."). This is all (of course) reason enough to deny Lewis's motion out of hand.

When, as here, a request for grand-jury materials is "presented at the very highest order of abstraction[,] the fact that these items are sought by defendants in a criminal case for use in defending the charges brought against them is insufficient standing alone" to justify disclosure. *United Kingdom v. United States*, 238 F.3d 1312, 1321 (11th Cir. 2001); *see also United States v. Rockwell Int'l Corp.*, 173 F.3d 757, 760 (10th Cir. 1999) ("No grand jury testimony is to be released for the purpose of a fishing expedition or to satisfy the unsupported hope of revelation of useful information."). Because we won't violate the strong presumption in favor of grand-jury secrecy to facilitate Lewis's baseless fishing expedition, we **DENY** his Grand Jury Materials Motion.

## II.    The Mistrial Motion

Lewis next asks us to declare a mistrial because (1) this Court effectively annulled his right to counsel by denying the Motion to Continue, *see* Mistrial Motion at 7–14, 15–19; (2) Lewis was prejudiced by certain statements (he claims) Ms. Troutwine made during closing arguments, *id.* at 2, 15; and (3) the Court was biased against him, *id.* at 14–15. All three arguments are meritless.

### a.   The Motion to Continue

It's true that, "[u]nder certain circumstances, the denial of a motion for a continuance of trial may vitiate the effect of th[e] fundamental right" to the assistance of counsel. *United States v. Verderame*, 51 F.3d 249, 251 (11th Cir. 1995). But the decision to grant or deny a continuance is "traditionally within the discretion of the trial judge," and "[t]here are no mechanical tests for deciding if a continuance is so arbitrary as to violate due process." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) (citations omitted). In determining whether the district court's denial of a defense request for continuance violated the defendant's rights, "[t]he answer must be found in the circumstances in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.* To help us answer this question objectively, the Eleventh Circuit has instructed trial courts to consider several factors—including "the length of delay," "whether other continuances have been requested and granted," "whether the requested continuance is for a legitimate reason," *United States v. Baker*, 432 F.3d 1189, 1248 (11th Cir. 2005), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813 (2006), "the accused's role in shortening the effective preparation time, the degree of complexity of the case, and the availability of discovery from the prosecution," *United States v. Jeri*, 869 F.3d 1247, 1257 (11th Cir. 2017).

All of these factors weigh heavily against Lewis here. Starting with "whether other continuances have been requested and granted." *Baker*, 432 F.3d at 1248. Lewis's trial, remember, had originally been scheduled for March of 2019. *See* Feb. 21, 2019 Order Setting Trial Date [ECF No. 9] at 1. But we were forced to continue it five[9] different times—three of these at Lewis's own request. *See generally* Docket. In the last of these (on August 28, 2019), we granted Lewis's *ore tenus* request for a continuance to give him more time to retain private counsel. *See* Aug. 28, 2019 Order Continuing

---

[9] The first of these continuances was granted by Judge Gayles before the case was reassigned to us. *See* Mar. 4, 2019 Paperless Order [ECF No. 16].

Trial [ECF No. 31] at 1 (continuing the trial from September 3, 2019 to October 2, 2019 and noting that "failure to grant the continuance would result in a miscarriage of justice in that counsel for Defendant would not have time to prepare their defense"). We even scheduled a status conference on September 3, 2019 to check in on Lewis's efforts to hire a lawyer. *See* Aug. 27, 2019 Paperless Order [ECF No. 30] ("If Notice of Appearance by new counsel is filed, [the September 3, 2019] status conference will be cancelled.").[10] We (notably) accommodated Lewis *even though* he first informed AFPD Cohen of his desire to retain private counsel only *seventeen days* before the trial was set to begin.[11] *Compare* Apr. 30, 2019 Order Continuing Trial [ECF No. 23] at 2 (setting trial for the two-week period beginning on August 19, 2019),[12] *with* Defendant's Aug. 6, 2019 Unopposed Motion to Continue Trial [ECF No. 26] at 1 n.1 (explaining that "the Defendant notified counsel on August 1, 2019, that he intended instead [of pleading guilty] to retain new counsel" and that the "representation was repeated on August 5, 2019"). By the time Ms. Troutwine presented the continuance request that's the subject of *this* motion, in other words, we had already continued the case for an additional *30 days* to protect the very same interest Lewis now says he wants vindicated—*viz.*, to give his lawyer more time to prepare. Lewis cites no case for his view that we were required to continue pushing off his trial date indefinitely simply because he (and maybe his lawyer) didn't want to face the music.

---

[10] We cancelled this status conference because Ms. Troutwine made an appearance on September 2, 2019—the day *before* the status conference was set to take place. *See* Troutwine's Notice of Attorney Appearance [ECF No. 35].

[11] AFPD Cohen informed the Court and the Government of Lewis's decision on August 6, 2019—twelve days before trial was set to start. *See generally* Defendant's Aug. 6, 2019 Unopposed Motion to Continue Trial [ECF No. 26].

[12] This Order Continuing Trial actually contained a clerical error in that it set the trial for August 18, 2019—which was a Sunday. *See* Apr. 30, 2019 Order Continuing Trial [ECF No. 23] at 2 ("The case is set for **Jury Trial** during the two-week trial period that begins on **August 18, 2019**."). But everyone seemed to understand that we intended to set the trial for the following day, which was Monday, August 19, 2019. *See, e.g.*, Aug. 2, 2019 Government's Motion to Continue Trial [ECF No. 24] at 1 ("Trial is presently set for the two-week period beginning on August 19, 2019.").

Next up is "the length of the delay." *Baker*, 432 F.3d at 1248. At the calendar call, Ms. Troutwine asked us to continue the trial *for another three months*. *See* Calendar Call Transcripts [ECF No. 255] at 11:12–13 ("I would request that the Court reset the calendar call for ninety days from today."). Again, we had continued this case five times already. And this sixth continuance would have required us to push a trial that was originally set for March 2019 to January 2020—mostly because Lewis kept firing his lawyers and hiring new ones. We've found no case—and Lewis cites to none—that would've obliged us to grant Lewis an additional 90-day continuance to allow his new lawyer to review a couple pieces of discovery that (as we're about to see) couldn't have made the least bit of difference.

As we've just hinted, "the requested continuance" was *not* "for a legitimate reason." *Baker*, 432 F.3d at 1248. Lewis insists that a continuance was necessary because "[p]reparation for trial in [such a] brief period of time is an impossible task," given the two terabytes of discovery the Government had produced. Mistrial Motion at 6; *see also id.* at 5–14 (arguing that the denial of the continuance prejudiced Lewis's defense). But Ms. Troutwine made no such argument in support of her Motion to Continue. *See generally* Motion to Continue [ECF No. 43]; Calendar Call Transcripts [ECF No. 255]. To the contrary, while she acknowledged that "discovery [was] still under review of counsel," Motion to Continue [ECF No. 43] at 1, she at no point suggested that it would have been impossible—or even particularly difficult—to review that discovery *before* trial, *see generally id.*; Calendar Call Transcripts [ECF No. 255]. Lewis's new argument, then, has been waived. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.").

And we have little difficulty rejecting (again) the two arguments Ms. Troutwine *did* make at the calendar call. The first, remember, was that she needed three months to review two pieces of additional discovery the Government had only recently turned over. That new discovery was (1) the certified transcript of a *previously disclosed* recording, and (2) a victim's bank records, which were just 22

14

pages long. *See* Calendar Call Transcripts at 3:11–4:13, 13:13–19 [ECF No. 255]. As we explained at the calendar call, this additional discovery was minimal, it was cumulative of discovery that had already been provided, and (as a result) it didn't justify *yet another* lengthy continuance. *Id.* at 4:14–24. Ms. Troutwine's second argument was that she needed 90 days to depose all of the Government's witnesses. *Id.* at 6:3–6. At the calendar call, we told Ms. Troutwine that, unlike in state court, "there are no depositions" in federal court and that she was only entitled to receive a copy of the witness list on the day of the calendar call—which, as it turns out, she already had. *Id.* at 6:7–12. When Ms. Troutwine insisted on discovery depositions, we—once again—explained that, in federal court, the defense was not entitled to depose the Government's witnesses. *Id.* at 7:3–15. We also confirmed that the Government had complied with its *Brady* and *Giglio* obligations and that, under our Court's practices, Ms. Troutwine would receive the Jencks Act materials earlier than the Jencks Act required. *Id.* at 7:16–8:18, 8:23–9:10. In light of this discussion, we determined that a continuance was unwarranted, and we denied Lewis's motion. *Id.* at 4:14–24. It, therefore, isn't the case—as Lewis now claims—that we "provided no explanation for denying the motion." Mistrial Motion at 6. To the contrary, as our minute entry for the calendar call made clear: "[t]he defendant's motion to continue [wa]s denied *for the reasons stated on the record.*" Sept. 25, 2019 Paperless Minute Entry [ECF No. 46] (emphasis added). Having gone back through the record now—and with the benefit of the overwhelming evidence the Government presented at trial—we now reiterate and reaffirm the conclusion we reached at the calendar call: that "the reasons presented to [this Court] at the time the request [was] denied" did not justify a further delay. *Ungar*, 376 U.S. at 589.

We also cannot ignore "the accused's role in shortening the effective preparation time[.]" *Jeri*, 869 F.3d at 1257. Lewis fired his lawyer—and hired Ms. Troutwine—just four-and-a-half weeks before his scheduled trial, even though both he and Ms. Troutwine were well aware of the trial date and had no reason to presume that another continuance would be granted. Indeed, the record suggests that

Lewis may have decided to retain Ms. Troutwine as early as August 1, 2019—when he first informed AFPD Cohen that he planned to retain private counsel. *See* Defendant's Aug. 6, 2019 Motion to Continue [ECF No. 26] at 1 ("[T]he Defendant notified counsel on August 1, 2019, that he intended instead to retain new counsel."). By Lewis's own admission, when he became "[u]nsure of [AFPD Cohen's] representation," he "sought the assistance of an attorney he considered a friend"—Ms. Troutwine. Mistrial Motion at 5. Ms. Troutwine formally entered the case on September 2, 2019. *See* Troutwine's Notice of Attorney Appearance [ECF No. 35]. If Lewis's timeline is to be believed, then he and Ms. Troutwine began working together some two months before the October trial and more than four weeks before Ms. Troutwine made a formal appearance. Even if Ms. Troutwine only began work on the case on September 2nd—when she first made her appearance—she *still* had more than a month to prepare for trial. Adequate time doesn't mean infinite time. *Cf. Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002) ("Courts have inherent authority to control the proceedings before them[.]"). And Lewis would be hard-pressed to show that it does.

The penultimate factor—"the degree of complexity of the case," *Jeri*, 869 F.3d at 1257—also favors the Government. This was no Theranos. We picked a jury by lunchtime of the first day and had a verdict on the afternoon of the fifth. *See* Trial Transcripts Volume Five [ECF No. 147] at 1180:20–23 (showing that the jury told the Court it had reached a verdict approximately 90 minutes into its deliberations); *see also* Jury Verdict as to Elvin Lewis, Jr. [ECF No. 83]. The Indictment, too, was simple: eleven straightforward counts—all alleging the very same crime (money laundering or conspiracy to commit money laundering) against the very same man. *See* Indictment [ECF No. 1].[13] The Government proved its case (mostly) through a series of extremely inculpatory text messages it put in through just two witnesses—a case agent and a naïve young woman whose testimony (cross

---

[13] As a result, the jury instructions totaled just 30 pages. *See* Jury Instructions [ECF No. 78].

and all) lasted no more than three hours. *See* Trial Transcripts Volume Three [ECF No. 145] at 520:25–635:25 (testimony of the case agent); *id.* at 641:2–686:13 (first half of the young woman's testimony); Trial Transcripts Volume Four [ECF No. 146] at 716:11–774:11, 779:8–827:8 (second half of the young woman's testimony). And it's undisputed that those text messages—and the substance of the cooperator's testimony—had been turned over to the defense long before Ms. Troutwine even appeared on the scene. *See generally* Mistrial Motion (never suggesting that the Government failed to timely disclose any of *this* crucial evidence to AFPD Cohen). As far as white-collar cases go, in other words, this case was as simple as it gets.

The final factor—"the availability of discovery from the prosecution," *Jeri*, 869 F.3d at 1257—likewise weighs against Lewis. Lewis claims that the "prosecution was very slow in turning over discovery." Mistrial Motion at 5. But that isn't true. The record, in fact, indicates that the Government worked hard to stay on top of its discovery obligations. Recall that, even before AFPD Cohen withdrew, AUSA Miller told Ms. Troutwine that the discovery was voluminous and that Ms. Troutwine would need to give the U.S. Attorney's Office a hard drive onto which it could be uploaded. *See* First Email from Miller to Troutwine [ECF No. 239-1] at 4. Remember, too, that AUSA Miller's first email was too large to go through. *See* Second Email from Miller to Troutwine [ECF No. 239-1] at 3. Taking the initiative—and working to get Ms. Troutwine the discovery she needed as quickly as possible—AUSA Miller then asked AFPD Cohen to share the discovery he had *directly* with Ms. Troutwine. *See id.* At the calendar call, the Government confirmed that it had disclosed any *Brady* and *Giglio* material in its possession. *See* Calendar Call Transcripts [ECF No. 255] at 7:18–8:7 ("Your Honor, we [the Government] have provided all discovery to the extent it would be classified as exculpatory I believe that's been provided, as well. . . . Yes [we've provided *Giglio* material] with the exception that your Honor I will do a final review of all communication with the agents and make sure if there's anything in there in emails or texts we'll review that to make sure. But I don't believe

that would be *Giglio* so much as it would be potential Jencks . . . ." (final italics added)). And Ms. Troutwine confirmed—both in her Motion to Continue and at the calendar call—that the Government had turned over a large trove of discovery, which she was in the process of reviewing. *See* Motion to Continue [ECF No. 43] at 1 ("Counsel for Lewis received discovery in this case . . . [and] this discovery is still under review of counsel."); *see generally* Calendar Call Transcript [ECF No. 255]. We also ordered the Government to hand over any Jencks Act documents before the start of trial—thus ensuring that Ms. Troutwine would have that important piece of discovery *before* she was entitled to it. *Compare* Calendar Call Transcript [ECF No. 255] at 8:15–9:11 ("[A]s part of my trial order, I [the Court] require them [the Government] to turn [Jencks Act material] over *before the start of trial* and I assume the government will be doing that. . . . I will order you [the Government] to provide all witness interview reports by the close of business tomorrow. So, you'll [Ms. Troutwine] have more than five days to have those, it sounds like you've got most of them already. I'll note that under the law you're not entitled to them until *after the witness has testified on direct examination.*" (emphasis added)), *with* 18 U.S.C. § 3500(b) ("*After a witness* called by the United States *has testified on direct examination*, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." (emphasis added)).

Assessing the totality of these circumstances, then, we have little difficulty rejecting Lewis's claim that he deserved (yet another) lengthy continuance. As we've summarized, we had given Lewis five continuances already—with the last of these coming just a few weeks before the earlier trial period, which we granted in order to give Ms. Troutwine more time to prepare. Ms. Troutwine's request for a 90-day continuance—coming, as it did, on the eve of the new trial date—was also unreasonable given the cumulative and inconsequential quality of the discovery she claimed she still needed to review. The Government's quick thinking and early disclosures—combined with our Jencks Act

procedures—ensured that Ms. Troutwine had all the discovery she needed well in advance of trial. And there's no dispute that the crucial evidence the Government used to convict Lewis in this relatively straightforward case had been turned over long before the jury was seated.

Even if the totality of the circumstances didn't weigh against Lewis, his motion would still fail because the Court's "[d]enial of a continuance, requested by a defendant in order to permit additional preparation for trial, must be upheld unless the defendant can show an abuse of discretion *and specific, substantial prejudice.*" *United States v. Saget*, 991 F.2d 702, 708 (11th Cir. 1993) (emphasis added). "To make such a showing, [the defendant] must identify relevant, non-cumulative evidence that would have been presented if his request for a continuance had been granted." *Id.* Lewis cannot meet this burden.

In his motion, Lewis claims that, if the continuance had been granted, he would've "produced witnesses to corroborate the Defendants [sic] experience with international lending" and "witnesses that would testify as to the Defendant's state of mind and corroborated text messages showing he was never made aware by the contractor of any criminal activity[.]" Mistrial Motion at 9. But Lewis doesn't identify any *specific* witnesses he would've called; nor does he explain how testimony regarding his experience in international lending would have helped his defense. *See generally id.* Putting aside for a moment Lewis's failure to identify any *specific* text messages he would've used, he never explains why he needed a continuance to introduce those messages. And there's a good reason for that: All of his text messages were introduced into evidence at the trial. *See* Government's Exhibit List [ECF No. 62]; *see also* Trial Transcripts Volume Three [ECF No. 145] at 520:25–635:25 (testimony of case agent discussing text messages); *id.* at 641:2–682:13 (testimony of co-conspirator discussing text messages); Trial Transcripts Volume Four [ECF No. 146] at 716:11–774:11 (same); *id.* at 779:8–827:8 (same). So, it would've been a simple task for him to point out for the jurors the ones he thought supported his defense. That he chose not to do so is, of course, evidence that there were no such messages. In any

event—as we've said—Lewis doesn't disagree that the Government disclosed these text messages long before the trial began. *See* Mistrial Motion at 12–13 (arguing that, "[b]y denying the Defendant a continuance[,] [Ms. Troutwine] was unable to adequately review, authenticate, and categorize text communications to rebut prosecutions [sic] allegations[,]"—*not* that defense counsel hadn't received those text messages). Lewis thus fails to explain *with specificity* why a further continuance was necessary.

Lewis also now says that he would've "present[ed] documentation and witnesses detailing how embezzlement schemes have been carried out with innocent people convicted of crimes or even killed in the cover-up[.]" Mistrial Motion at 11. Again, despite the bluster, Lewis fails to identify even a single *specific* "document[ ]" or "witness[ ]" to support this claim—probably because Lewis has no such evidence. Even if he did, though, we would've excluded it as irrelevant under Rule 403. After all, the mere fact that embezzlement schemes may be covered up in *some* cases tells us nothing about what happened *in this case*. And we don't need to speculate about what happened in this case because the jury heard testimony from Lewis's co-conspirator and read Lewis's own text messages—all of which provided overwhelming proof of Lewis's guilt. Having reviewed the trial transcripts now, we can safely say that neither the cooperator nor the text messages lent any support to Lewis's fall-guy defense.

Finally, Lewis insists that, with the continuance, he would've "filed motions to dismiss the indictment, motions to suppress evidence, motion for Brady materials, motion for return of seized property, motions in limine, and hosts of other motions." *Id.* at 10. But Lewis (through counsel) *did* file many of these motions. Ms. Troutwine, in fact, filed *three* Motions to Dismiss the Indictment. *See* First Motion to Dismiss the Indictment [ECF No. 57]; Second Motion to Dismiss the Indictment [ECF No. 58]; Supplemental Motion to Dismiss the Indictment [ECF No. 61]. At the calendar call, she also brought up some *Brady* and discovery issues. *See* Calendar Call Transcripts [ECF No. 255] at 6:3–6, 7:3–6, 7:8–10, 9:20–10:1. And, as we've said, she had more than enough time from her appointment (September 2, 2019) to the trial (October 2, 2019) to file any other motions she deemed

appropriate. As a matter of fact, the Government filed its own motion *in limine* on September 24, 2019, *see* Government's Motion *in Limine* [ECF No. 45]—well after Ms. Troutwine came into the case. Lewis doesn't explain why Ms. Troutwine couldn't have done the same. In any event—again—Lewis never tells us what strategies he would've advanced in the motions (he now says) he would've filed, *see generally* Mistrial Motion, so he's failed to establish the kind of "specific, substantial prejudice" that's required to overturn the denial of a defense continuance. *Saget*, 991 F.2d at 708.

### b. Ms. Troutwine's Closing Argument

In what may be his most bizarre contention, Lewis maintains that Ms. Troutwine told the jury (in closing) that her client was guilty. Of course, the trial transcript reveals no such thing.

"The decision to grant a mistrial is within the sound discretion of the trial judge since he is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." *United States v. Blakey*, 960 F.2d 996, 1000 (11th Cir. 1992). "To establish entitlement to a mistrial, a defendant must show that his substantial rights are prejudicially affected; that is, there is a reasonable probability that, but for the statement, the outcome of the trial would have been different." *United States v. Larose*, 399 F. App'x 575, 576 (11th Cir. 2010) (cleaned up). "For an alleged improper closing argument to justify a new trial, the argument must be both improper and prejudicial to a substantial right of the defendant." *United States v. Garcia*, 405 F.3d 1260, 1272 (11th Cir. 2005) (cleaned up); *see also United States v. Ulloa*, 355 F. App'x 286, 290 (11th Cir. 2009) (holding that the district court "did not abuse its discretion when it declined to grant a mistrial because of an allegedly improper closing argument"); *United States v. Anderson,* 782 F.2d 908, 916 (11th Cir. 1986) ("[P]rejudicial testimony will not mandate a mistrial when there is other significant evidence of guilt which reduces the likelihood that the otherwise improper testimony had a substantial impact on the verdict of the jury.").

Here, we needn't even consider whether, "but for the statement, the outcome of the trial would have been different," *Larose*, 399 F. App'x at 572, or whether "there is other significant evidence

of guilt," *Anderson*, 782 F.2d at 916, because Ms. Troutwine *never made* the supposedly prejudicial comment in the first place.[14] Lewis claims that, "[d]uring closing argument, the Defendant's counsel told the jury, and I quote, 'My [client] is guilty!! But he is foolish!'" Mistrial Motion at 15 (final alteration in original). He adds that "a review of the trial transcripts will verify this[.]" *Id.* It won't. Nowhere in the transcript, in fact, does Ms. Troutwine say anything close to that. *See generally* Trial Transcripts Volume One [ECF No. 143]; Trial Transcripts Volume Two [ECF No. 144]; Trial Transcripts Volume Three [ECF No. 145]; Trial Transcripts Volume Four [ECF No. 146]; Trial Transcripts Volume Five [ECF No. 147]. To the contrary—as we've said—she, time and again, contended that Lewis was *not* guilty. *See, e.g.*, Trial Transcripts Volume One [ECF No. 143] at 195:2–3 ("You're going to see he's an innocent man that got involved with the wrong people."); *id.* at 202:13–15 ("My client is innocent. This government will not be able to prove beyond a reasonable doubt that he has a full understanding or knowledge of this scam."); Trial Transcripts Volume Five [ECF No. 147] at 1155:15 ("He is an innocent man. He is not guilty.").[15] And that's really the end of that.

### c. The Court's Supposed Bias

Unhappy about his conviction—as we've seen—Lewis has blamed his lawyer and the Government for his troubles. With no one left to castigate, Lewis now does one better: the Court, he says, was *also* out to get him. Here, he claims that "the assumption of Judge Altman being racist is not far fetched[.]" Mistrial Motion at 14. What proof does he have of this? Well, two things, actually: our decision to "deny[ ] a continuance that was unopposed" and our "[f]ailure to declare a mistrial" after

---

[14] In any event, as we've outlined, the evidence of Lewis's guilty was overwhelming. It included 12 witnesses, *see* Government's Final Witness List [ECF No. 74] (listing the witnesses who testified during the Government's case-in-chief), and hundreds of exhibits, *see* Government's Revised Exhibit List [ECF No. 73] (listing the exhibits admitted during the Government's case-in-chief)—with much of the critical evidence coming from Lewis's own text messages and his partner in crime.

[15] Lewis says that a "mistrial should have been declared sua sponte" because "[t]elling a jury [defense counsel's] client is guilty fatally prejudiced the Defendant." Mistrial Motion at 15. But, since Ms. Troutwine never said any such thing, there wasn't—and isn't—any reason to declare a mistrial.

Ms. Troutwine (supposedly) told the jury to find Lewis guilty. *See* Disqualification Motion at 3, 4. Of course, "adverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt." *Byrne v. Nezhat*, 261 F.3d 1075, 1103 (11th Cir. 2001), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). And neither of the adverse rulings Lewis relies on even hint at any bias against him. As we've explained, we denied the continuance because the relevant factors weighed heavily against it—especially since, according to Ms. Troutwine, she needed the continuance to (1) review a few pages of (somewhat) cumulative discovery and (2) take depositions she wasn't entitled to. As for Ms. Troutwine's closing—as we've seen—Lewis has imagined the comment he complains about.

What Lewis conveniently ignores, of course, are the many times we gave Lewis what he wanted and ruled *against* the Government. To list but a few examples, we denied two of the Government's four motions *in limine*. *See* Calendar Call Transcript [ECF No. 255] at 11:15–12:6 (sustaining Ms. Troutwine's objection to the Government's request that she be prohibited from highlighting the prosecutors' decision *not* to charge certain co-conspirators), 12:8–13:11 (sustaining Ms. Troutwine's objection to the admissibility of evidence showing that Lewis was on probation at the time of the charged conduct); *see also* Sept. 25, 2019 Paperless Order Granting in Part and Denying in Part the Government's Motion *in Limine* [ECF No. 49]. And these were no small matters: As a result of these rulings, the Government was prohibited from introducing "[e]vidence of [Lewis]'s status as being on probation for a state offense at the time of the charged money laundering offenses," and Ms. Troutwine was allowed to "[a]ttack[] prosecutorial discretion" regarding the Government's decision *not* to charge Lewis's co-conspirators. Government's Motion *in Limine* [ECF No. 45] at 1. We also granted Lewis *five* trial continuances. *See* Mar. 4, 2019 Paperless Order [ECF No. 16]; Apr. 26, 2019 Paperless Minute Entry [ECF No. 22]; Apr. 30, 2019 Order Continuing Trial [ECF No. 23]; Aug. 19, 2019 Order Continuing Trial [ECF No. 29]; Aug. 28, 2019 Order Continuing Trial [ECF No. 31]. At

23

the trial itself, we sustained four of Lewis's objections and overruled nine of the Government's. *See* Trial Transcripts Volume Two [ECF No. 144] at 364:2, 390:22, 455:22, 464:14; Trial Transcripts Volume Three [ECF No. 145] at 633:13–14; Trial Transcripts Volume Four [ECF No. 146] at 786:19, 790:3, 943:6; Trial Transcripts Volume Five [ECF No. 147] at 1052:16–17, 1070:22, 1071:16, 1144:23, 1195:3–4. During the life of this case, we have allowed Lewis to have *seven* different lawyers—and, for a time, to proceed *pro se*—despite the lengthy delays this midstream-horse-jumping has caused. And, at his request, we have consistently continued the sentencing hearing. *See* Oct. 16, 2020 Paperless Order [ECF No. 197] (granting the Defendant's motion and resetting sentencing for January 29, 2021); Mar. 15, 2021 Paperless Order [ECF No. 210] (granting the Defendant's motion and resetting sentencing for May 25, 2021); May 1, 2021 Paperless Order [ECF No. 221] (granting the Defendant's two motions to continue sentencing and resetting sentencing for August 30, 2021); Oct. 7, 2021 Paperless Order [ECF No. 248] (granting in part and denying in part the Defendant's omnibus motion and resetting sentencing for December 13, 2021); Dec. 10, 2021 Paperless Order [ECF No. 252] (granting the motion to continue sentencing and resetting sentencing for January 7, 2022). Lewis (of course) cites none of these things in his motion—even though, taken together, they eviscerate his bias claim.

Lewis's Mistrial Motion, in short, is **DENIED**.[16]

## III.   The Disqualification Motion

Lewis has also filed a "Motion for Disqualification of the Judge." Disqualification Motion [ECF No. 229]. Once again, he fails to meet his burden.

---

[16] Since we've denied the Mistrial Motion, we **DENY AS MOOT** Lewis's separate Hearing Motion [ECF No. 228].

The recusal of a federal *trial* judge is governed by two federal statutes: 28 U.S.C. § 455 and 28 U.S.C. § 144.[17] *See Hamm v. Members of Bd. of Regents of State of Fla.*, 708 F.2d 647, 651 (11th Cir. 1983) ("Two statutes govern the recusal of a federal district judge."). Under the former, a judge must disqualify himself "in any proceeding in which his impartiality might reasonably be questioned," § 455(a), or in which "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," § 455(b)(1). Disqualification is appropriate under § 455 when the bias "stem[s] from extrajudicial sources, unless the judge's acts demonstrate such pervasive bias and prejudice that it unfairly prejudices one of the parties." *United States v. Singletary*, 196 F. App'x 819, 820 (11th Cir. 2006) (cleaned up). A judge's "adverse rulings" don't "constitute the sort of 'pervasive bias' that necessitates recusal." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).

Under the latter statute, when "a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further" and a "another judge shall be assigned." 28 U.S.C. § 144. "Before a judge recuses [him]self, a § 144 affidavit must be strictly scrutinized for form, timeliness, and sufficiency." *United States v. Perkins*, 787 F.3d 1329, 1342 (11th Cir. 2015) (cleaned up). "To warrant recusal under § 144, the moving party must allege facts that would convince a reasonable person that bias actually exists." *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000). This is a heavy burden because "the Supreme Court has held that judicial remarks that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* at 1334 (cleaned up). To justify

---

[17] A separate recusal statute, 28 U.S.C. § 47, applies to federal appellate judges and to trial judges sitting by designation on appellate panels. *See* 28 U.S.C. § 47 ("No judge shall hear or determine an appeal from the decision of a case or issue tried by him.").

For a comparison of Sections 455 and 144, see FEDERAL JUDICIAL CENTER, RECUSAL: ANALYSIS OF CASE LAW UNDER 28 U.S.C. §§ 455 & 144 (2002), available at https://www.courtappointedmasters.org/acam/assets/File/public/resources/Recusal.pdf.

recusal, the challenged statements must "reveal an opinion that derives from an extrajudicial source," which would occur "if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* (cleaned up).

As support for his challenge to the Court's impartiality under § 455, Lewis (1) says that, "[b]y denying an unopposed continuance Judge Altman effectively became an advocate for the prosecution," Disqualification Motion at 2; (2) argues that, in denying Lewis's motion to serve as co-counsel, "Judge Altman threatened to deny new counsel" by noting that "[the Defendant] is now on his third lawyer and he will not be getting a fourth," *id.* at 3 (quoting Apr. 13, 2020 Paperless Order [ECF No. 153]); and (3) maintains that, in denying Lewis's request for bond pending sentencing, the Court relied on "contradictions, fabrications, and misrepresentations" that were only "found through th[e] unconstitutional trial[,]" Affidavit in Support of the Disqualification Motion [ECF No. 229-1] (the "Disqualification Motion Affidavit") at 4, 2. Lewis also argues for disqualification under § 144 because, "[a]s a result of the Judges [sic] discriminatory treatment of the Defendant, defense counsel, during closing argument[,] told the jury '[my client] is guilty!!'" Disqualification Motion at 4 (final alteration in original). As he did in his Mistrial Motion, he insists that a "mistrial should have been declared sua sponte" and that the "failure to declare a mistrial is further proof of personal bias." *Id.* Finally, Lewis contends that, in resolving his *post*-conviction motions, "Judge Altman reveals in writing his personal bias and prejudice." Disqualification Motion Affidavit at 2.

Of Lewis's five arguments, in short, we've already rejected two—that the denial of the Motion to Continue stemmed from our prejudice against him and that our evident bias impelled Ms. Troutwine to confess, at closing, that Lewis was guilty. We thus will not re-address those two points here. And Lewis's remaining claims fare no better.

Starting with his motion for bond, we denied it in a 10-page order after concluding that "Lewis has not met his burden of proving either that he will not flee or that he no longer poses a danger to

his community." Order Denying Motion for Bond [ECF No. 199] at 4. "To the contrary," as we explained, "for the following *five* reasons, the Court is left with the 'definite and firm conviction' that Lewis poses both a flight risk and a danger to his community." *Id.* (quoting *United States v. Grobman*, 2020 WL 3286039, at *4 (S.D. Fla. Apr. 24, 2020)). Those five reasons were: (1) Lewis had a powerful "incentive to flee," given that he was facing an advisory guidelines range of 108–135 months in prison, *id.* at 4–5 (quoting *United States v. Bonilla*, 388 F. App'x 78, 80 (2d Cir. 2010) (recognizing the self-evident proposition that a lengthy prison term "provides a strong incentive for [a defendant] to flee")); (2) "Lewis has a history of violating the conditions of his probation by, for example, failing to "promptly and truthfully answer the inquiries of the probation officer" and "fail[ing] to make restitution payments," *id.* at 5 (quoting Pre-Sentence Investigation Report ("PSI") [ECF No. 174] ¶ 47); (3) "this wasn't Lewis'[s] first run-in with the law. In fact, when Lewis got involved in this conspiracy, he had already been arrested and sentenced for a separate crime involving deception," *id.* (quoting PSI ¶ 47); (4) "Lewis was convicted of a scheme premised on widespread deception," *id.* at 6 (quoting *United States v. Burke*, 2013 WL 5194138, at *1 (S.D. Fla. Sept. 17, 2013) (Cohn, J.)); and (5) "Lewis laundered some three-million dollars—a crime spree that netted him substantial seven-figure profits, more than enough to sustain him on the run," *id.* at 6 (citing *Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1304 (S.D. Fla. 2017) (relying on several cases for the proposition "that defendants with financial means to flee pose a serious risk of flight") (Torres, Mag. J.).

Lewis, of course, may disagree with our characterization of the facts—though, aside from his claim that the bond order was premised on "contradictions, fabrications, and misrepresentations," he does nothing to rebut our view. In any event, none of our five reasons would "convince a reasonable person that bias actually exists[,]" because none of them "derive[] from an extrajudicial source" or "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Christo*,

223 F.3d at 1333. To the contrary, all five points relied on direct citations to the PSI or to *other* federal decisions—none of which, it goes without saying, are either "extrajudicial" or infected by a "high degree of favoritism."

Lewis's claim that we threatened to deny him the right to the effective assistance of counsel is similarly divorced from the facts. Indeed, far from obstructing Lewis's decision to secure his counsel of choice, we've allowed him to retain (and then fire) *six* different lawyers in this case—a generosity that, in our experience with the federal judiciary, very few judges would've entertained.[18] We did, it's true, warn Lewis—in denying his Motion to be Appointed Co-counsel [ECF No. 149]—that "[Lewis] is now on his third lawyer, and he will not be getting a fourth," Apr. 13, 2020 Paperless Order [ECF No. 153]. But we were perfectly justified in giving him this admonition. *See, e.g.*, *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985) ("An indigent criminal defendant has an absolute right to be represented by counsel, but he does not have a right to have a particular lawyer represent him, nor to demand a different appointed lawyer except for good cause." (citations omitted)); *United States v. James*, 831 F. App'x 442, 448 (11th Cir. 2020) (rejecting the defendant's argument "that the magistrate judge violated his Sixth Amendment right to counsel by refusing to appoint a third lawyer to represent him"). And, in any case, we (perhaps foolishly) didn't follow through on our threat. Instead, as we've seen, we've given Lewis free reign to hire and fire an almost-endless stream of lawyers. Hardly the stuff of which bias is made.

Lastly, Lewis doesn't like that we've denied some of his post-trial motions. *See* Disqualification Motion at 6; Disqualification Motion Affidavit at 2–4. But the law is clear that a judge's "adverse rulings" do not "constitute the sort of 'pervasive bias' that necessitates recusal." *Loranger*, 10 F.3d at

---

[18] Again, those terminated lawyers are (in order): AFPD Cohen, Ms. Trouwine, AFPD Blair, Messrs. Fisher and Butlien, Erick Cruz, and Mr. Davis. *See generally* Docket. Mr. Fenn is thus the *seventh* lawyer we've allowed to enter an appearance for Lewis—despite the many delays these comings-and-goings have caused.

781. We *have* denied some of Lewis's post-trial motions—it's true. But those motions were frivolous

and were properly denied.[19] Again, though, Lewis forgets to mention that we haven't denied *all* his

post-trial motions. Far from it.[20] Contra Lewis's assertions, in sum, these decisions just don't seem

---

[19] *See* Oct. 16, 2019 Paperless Order Denying the Motion for Acquittal [ECF No. 88]; Nov. 25, 2019 Paperless Order Striking the *Pro Se* Motion for Leave to Appeal in Forma Pauperis [ECF No. 105]; Dec. 13, 2019 Paperless Order Striking the Motion for Post-Conviction Relief, Notice to the Chief Judge, Motion for Discovery, Motion for Change of Venue, and Motion for Trial Transcripts [ECF No. 115] ("The Defendant is now represented by counsel and, as such, may not file pro se on the docket."); Paperless Order Striking the First Motion to Compel [ECF No. 122] ("The Defendant is represented by counsel and may file documents with the Court only through his counsel."); Paperless Order Striking the Second Motion to Compel [ECF No. 123] (same); Mar. 5, 2020 Paperless Order Denying the Motion for Bond Pending Sentencing [ECF No. 137]; Apr. 13, 2020 Paperless Order Denying Motion to be Appointed Co-Counsel [ECF No. 153] ("The Defendant, who is not a lawyer, and who is represented by able Court-appointed counsel, has asked for permission to argue points of law in Court and to have his motions adjudicated. . . . So long as he is represented by counsel, the Defendant may speak in Court—and may file on the docket—only [through] his Court-appointed counsel."); Apr. 14, 2020 Paperless Order Striking the Motion for Release Pending Appeal of Detention Order [ECF No. 156] ("Mr. Lewis is represented by counsel and thus cannot file motions on the docket."); Apr. 14, 2020 Paperless Order Striking the Motion to Arrest Judgment [ECF No. 159] (same); Apr. 28, 2020 Paperless Order Striking the Second and Third Motions for Release Pending Appeal [ECF No. 166] (same); Order Denying the Motion for Bond [ECF No. 199] at 9 ("To give *this Defendant*, in *these circumstances*, a bond—because he *may* (one day) get sick—would be to allow (almost) every non-violent defendant in the country out onto the streets. This the Court will not do."); July 23, 2021 Paperless Order Denying the Motion to Continue Sentencing [ECF No. 237]; Oct. 7, 2021 Paperless Order on Various Motions [ECF No. 248] (denying as moot the Motion for Discovery and Trial Transcripts and to Continue sentencing and granting in part and denying in part the Motion for Forwarding of Trial Transcripts, Discovery, and Additional Documents and to Continue Sentencing).

[20] *See* Dec. 17, 2019 Paperless Order Granting the Motion for Substitution of Counsel [ECF No. 118]; Dec. 17, 2019 Paperless Order Granting the Motion for an Extension of Time to File Objections to the PSR [ECF No. 119]; Jan. 8, 2020 Paperless Order Granting the Motion to Substitute Counsel [ECF No. 129]; Jan. 22, 2020 Paperless Order Granting Motion to Continue Sentencing [ECF No. 132]; Oct. 16, 2020 Paperless Order Granting the Motion to Continue Sentencing [ECF No. 197]; Dec. 8, 2020 Paperless Minute Entry for Motion Hearing [ECF No. 206] ("The Court grants the Defendant's Sealed Motion to Dismiss Court Appointed Counsel[.]"); Mar. 15, 2021 Paperless Order Granting the Motion to Continue Sentencing [ECF No. 210]; May 18, 2021 Paperless Order Granting the Two Motions to Dismiss Counsel and Self-Represent with Standby Counsel [ECF No. 220]; May 19, 2021 Paperless Order Granting the Motion to Continue Sentencing [ECF No. 221]; Oct. 7, 2021 Paperless Order on Various Motions [ECF No. 248] (granting in part and denying in part the Motion for Forwarding of Trial Transcripts, Discovery, and Additional Documents and to Continue Sentencing, and directing Lewis to "ask his stand-by counsel for copies of the trial transcripts, which are available on the public docket"); Dec. 10, 2021 Paperless Order Granting Motion to Continue Sentencing [ECF No. 252].

"reminiscent of Jim Crow Era deprivation of African American human and civil rights." Disqualification Motion at 4.

One last thing. In his motion, Lewis also threatens to sue us for discrimination. *See id.* at 5 ("Once Judge Altman is exposed for the violation of the Defendants [sic] civil rights and/or his qualified immunity fails to cover his bad faith action, he quite possibly will be a defendant in the Defendant's 1983 complaint."). Lewis doesn't suggest that this not-so-veiled threat warrants recusal— nor could he. "A judge is not disqualified by a litigant's suit or threatened suit against him . . . , or by a litigant's intemperate and scurrilous attacks." *Cuyler v. Aurora Loan Servs., LLC*, 2012 WL 10488184, at *1 n.2 (11th Cir. Dec. 3, 2012) (citing United *States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986)); *see also In re Bush*, 232 F. App'x 852, 853–54 (11th Cir. 2007) ("A judge is not disqualified merely because a litigant sues or threatens to sue him." (cleaned up)). And this makes sense: "The right to an impartial judge cannot be advanced so broadly as to permit the parties to engage in 'judge-shopping' under the guise of a motion to recuse[.]" *In re Martin-Trigona*, 573 F. Supp. 1237, 1243 (D. Conn. 1983) (cleaned up). We can't, in other words, allow defendants to get rid of judges they don't like merely by threatening to sue them in separate actions. Given Lewis's track record of disagreements with his own lawyers, we'd likely find ourselves, after a while, without any judges left to sentence him.

Lewis's Disqualification Motion is **DENIED**.

## IV.    The Motions to Produce Documents

In his next two motions, Lewis asks us to order the Government to produce certain documents to him. In his first such motion, he wants "all filings made to the appellate court in case

20-11299, a complete docket, [and] a complete trial transcript." Trial Transcript Motion at 1.[21] In the second, he demands the "audio for the trial[.]" Trial Audio Motion at 1.

Lewis *is* entitled to the trial transcripts, the docket, and any filings that have been made in his appellate case—so the Motion for Trial Transcript is **GRANTED**. These documents are all available on the public docket, and Mr. Fenn—as Lewis's counsel —may access them there.

Lewis, on the other hand, cannot get the audio recordings of the trial because our District doesn't record criminal (or civil) trials. The only official record of what occurred during the trial are the court reporter's transcripts, which—as we've said—are available on the public docket. *See* Oct. 7, 2021 Paperless Order [ECF No. 248] ("The Defendant should ask his stand-by counsel for copies of the trial transcripts, which are available on the public docket at 142, 143, 144, 145, 146, and 147."). Lewis's Trial Audio Motion is, therefore, **DENIED**.

## V.     The Sanctions Motion

Finally, Lewis asks that we "sanction the prosecution," "strike any response the prosecution proffers," and "as a result of the prosecution's default, grant Defendants' [sic] motion to compel grand jury materials, emergency motion for mistrial, emergency motion to disqualify judge, and motion for audio of trial recording." Sanctions Motion at 4. These actions are justified, in Lewis's view, because (he says) the Government never responded to his motions. *Id.* at 2. According to Lewis, "the prosecution's failure to comply with the law by default[ ] prevents them from enforcing the law." *Id.* at 4. But Lewis is wrong on both the facts and the law.

The Government did, in fact, respond to Lewis's motions. After we ordered the prosecution to respond, *see* July 1, 2021 Order Requiring Single Response [ECF No. 232], the Government filed

---

[21] He also requests any documents that have been filed in a separate civil case before Judge K. Michael Moore. But that's a request Lewis should make to Judge Moore. To the extent Lewis is asking us to make decisions for Judge Moore, that aspect of his motion is **DENIED**.

an Omnibus Response, *see generally* Omnibus Response—precisely as we had instructed it to do. And, while the Government did seek a brief extension of time, *see* Motion for Extension of Time to Respond [ECF No. 236], we granted that request, *see* July 23, 2021 Paperless Order [ECF No. 238]. And there's no dispute that the Omnibus Response was filed *before* the Court's deadline expired.

Lewis is right to point out that the Government *didn't* initially respond until we ordered it to. *See generally* Docket. But this is where he gets the law wrong: He says that the "[t]rial court, by rule, is *required* to find that the prosecutors [sic] failure to comply with its order is willful, strike any subsequent pleading, and grant the Defendants' [sic] motions." Sanctions Motion at 3 (emphasis added). That's not the law. Under its inherent powers, the district court *may*—but need not—impose sanctions on a party for failing to meet a deadline. *See Kelsey v. Withers*, 718 F. App'x 817, 820 (11th Cir. 2017) (citing *Torres v. Puerto Rico*, 485 F.3d 5, 11 (1st Cir. 2007), for the proposition that "[d]istrict courts have wide discretion to set reasonable deadlines . . . , and they *may* impose condign sanctions on parties who do not comply" (emphasis added)); *see also Depositers Ins. Co. v. Velilla*, 2013 WL 12131606, at *2 (S.D. Fla. July 30, 2013) (Rosenbaum, J.) ("A court *may* impose sanctions, including dismissal, on a party that fails to comply with the court's orders." (emphasis added)). Indeed, the court can only "sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (cleaned up).

There's no evidence that, in failing to respond *initially* to the motions, the Government acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." To the contrary, given our demonstrated willingness over the life of this case to rule on Lewis's *pro se* motions *before* waiting for the Government's response,[22] the Government may well have believed that we'd rule on *these* motions

---

[22] *See* Nov. 25, 2019 Paperless Order Striking the Pro-Se Motion for Leave to Appeal in Forma Pauperis [ECF No. 105]; Dec. 13, 2019 Paperless Order Striking the Motion for Post-Conviction Relief, Notice to the Chief Judge, Motion for Discovery, Motion for Change of Venue, and Motion for Trial Transcripts [ECF No. 115]; Dec. 17, 2019 Paperless Order Granting Motion for Substitution

much as we had the others—*i.e.*, without a response from the prosecution. Once we directed the Government to file an omnibus response, however, the Government promptly complied with our directive. So, Lewis's Sanctions Motion is **DENIED**.

***

After careful review, we hereby **ORDER and ADJUDGE** as follows:

1. The Motion to Compel the Production of Grand Jury Materials [ECF No. 223] is **DENIED**.

2. The Emergency Motion for a Mistrial [ECF No. 224] is **DENIED**.

3. The Motion for Trial Transcript [ECF No. 226] is **GRANTED**. Mr. Fenn may access these documents on the public docket.

4. The Motion for a Hearing on the Emergency Motion for a Mistrial [ECF No. 228] is **DENIED as moot**.

5. The Emergency Motion for Disqualification of the Judge [ECF No. 229] is **DENIED**.

6. The Motion to Produce Trial Audio [ECF No. 230] is **DENIED**.

7. The Motion for Sanctions, to Strike the Government's Response, and for Default Judgment [ECF No. 242] is **DENIED**.

---

of Counsel [ECF No. 118]; Dec. 27, 2019 Paperless Order Granting Motion for Extension of Time to File Objections to PSR [ECF No. 119]; Dec. 27, 2019 Paperless Order Striking First Motion to Compel [ECF No. 122]; Dec. 27, 2019 Paperless Order Striking Second Motion to Compel [ECF No. 123]; Jan. 22, 2020 Paperless Order Granting in Part Motion to Continue Sentencing [ECF No. 132]; Mar. 5, 2020 Paperless Order Denying Motion for Bond Pending Sentencing [ECF No. 137]; Apr. 13, 2020 Paperless Order Denying Motion to be Appointed Co-Counsel [ECF No. 152]; Apr. 14, 2020 Paperless Order Striking Motion for Release Pending Appeal of Detention Order [ECF No. 156]; Apr. 14, 2020 Paperless Order Striking the Motion for Arrest of Judgment [ECF No. 159]; Apr. 28, 2020 Paperless Order Striking the Two Motions for Release Pending Appeal [ECF No. 166]; Oct. 16, 2020 Paperless Order Granting Motion to Continue Sentencing [ECF No. 197]; Oct. 23, 2020 Paperless Order Denying the Motion for Bond [ECF No. 199]; Dec. 7, 2020 Paperless Order Denying as Moot Pro-Se Request and Denying the Motion for Bond [ECF No. 204]; Mar. 15, 2020 Paperless Order Granting the Motion to Continue [ECF No. 210]; July 23, 2021 Paperless Order Denying the Motion to Continue Sentencing [ECF No. 237].

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 20th day of December 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record